**BENDAU & BENDAU PLLC**
Clifford P. Bendau, II (AZ Bar No. 030204)
Christopher J. Bendau (AZ Bar No. 032981)
P.O. Box 97066
Phoenix, Arizona 85060
Telephone: (480) 382-5176
Fax: (480) 304-3805
Email: cliffordbendau@bendaulaw.com
         chris@bendaulaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **John Doe Employee**<br><br>Plaintiff,<br><br>v.<br><br>**Shade Masters LLC**, a Delaware limited liability company,<br><br>Defendants. | No. 2:26-cv-01132-SMM<br><br>**PLAINTIFF'S MOTION TO REINSTATE COMPLAINT AND PROCEED UNDER PSEUDONYM AND FOR PROTECTIVE ORDER REQUIRING DEFENDANTS TO REFRAIN FROM DISCLOSING PLAINTIFF'S IDENTITY** |

Plaintiff, John Doe Employee ("Plaintiff" or "John Doe Employee"), respectfully requests that the Court reinstate the Complaint, which the Court struck pursuant to the February 20, 2026, Order (Doc. 5), and allow him to proceed under a pseudonym in this matter and for a protective order. Specifically, Plaintiff requests that this Court allow him to proceed under a pseudonym in this matter to protect his identity from public disclosure while he pursues remedies available to him under the FLSA and for a protective order prohibiting Defendants from disclosing his identity.

-1-

# INTRODUCTION

This case involves the potential for highly sensitive and private information about John Doe Employee to become public if his identity is required to be disclosed. Plaintiff is an undocumented immigrant who Defendants employed. On information and belief, Defendants had knowledge of Plaintiff's immigration status throughout his employment. Plaintiff worked six weeks for Defendants before being fired from his job. He generally worked approximately 72 hours per week for those six weeks but was paid only $250 for his entire employment. Indeed, when he inquired with Defendants as to why they did not pay him, they responded that they would not pay him and would send the United States and Customs Enforcement ("ICE") after him if he were to take any action seeking unpaid wages. Accordingly, Plaintiff was left with no compensation for work performed in his six-week employment but for $250. The failure to pay Plaintiff any wages whatsoever for such time (approximately six workweeks) resulted in a violation of the Fair Labor Standards Act ("FLSA") and Arizona wage law.

Plaintiff wishes to pursue his legitimate FLSA and Arizona wage claims but fears disclosure of his real name in this lawsuit. He worries that, by disclosing his name and immigration status, he could put himself and/or his family at risk for potential arrest, prosecution, and deportation from this country while pursuing remedies that are otherwise legally available to him, regardless of his immigration status. Plaintiff therefore respectfully requests that the Motion to Proceed Under Pseudonym be granted, that he be permitted to be identified as John Doe Employee, that Defendants be

-2-

prohibited from disclosing his identity publicly, and that the Court reinstate the Complaint. The following Memorandum of Points and Authorities supports this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

Rule 10(a) of the Federal Rules of Civil Procedure states, "[t]he title of [a] complaint must name all the parties[.]" *See also* LR Civ 7.1(a)(3). But a plaintiff is permitted to file anonymously "in the 'unusual case' when nondisclosure of the party's identity is necessary…to protect a person from harassment, injury, ridicule or personal embarrassment." *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (quoting *United States v. Doe*, 655 F.2d 920, 922, n. 1 (9th Cir. 1981)). Ultimately, when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity," the party may proceed under a pseudonym. *Advanced Textile Corp.*, 214 F.3d at 1068.

Courts in this circuit have employed a five-prong test in evaluating requests to proceed under a pseudonym where fear of retaliation is claimed:

(i)     Severity of the threatened harm;

(ii)    Vulnerability to retaliation;

(iii)   Reasonableness of the fear;

(iv)    Prejudice to Defendants; and

(v)     The public's interest in court proceedings.

*E.E.O.C. v. ABM Industries Inc.*, 28 F.R.D. 588, 593-95. The analysis below attempts to quantify each factor separately; however, under these circumstances, where Plaintiff is no longer employed by Defendants, the facts and circumstances supporting the analysis

-3-

blend such that a distinct analysis of each is nearly impossible without discussing a given combination of them at once. Ultimately, the analysis here hinges primarily on the significance of the harm associated with revealing Plaintiff's identity, the objective reasonableness of that fear, and the irrelevance of immigration status to FLSA actions entirely. Each of the five factors Each factor supports granting the motion.

**I.     The harm of revealing Jane Doe Employee's identity is substantial.**

Defendants' failure to pay Plaintiff any wages whatsoever but for $250 for the entire duration of his employment resulted in Plaintiff not even having received minimum wage for the time he worked. This violates the Fair Labor Standards Act ("FLSA") and Arizona wage law and has caused Plaintiff extreme hardship in trying to maintain his livelihood. Plaintiff's status as an undocumented immigrant would, at first glance, appear to directly clash with his ability to obtain payment through use of the Federal Court system, leading to an impossible dichotomy: should he risk continued poverty or deportation?

Fortunately, the FLSA and supporting case law consistently hold that immigration status is irrelevant to an FLSA claim. *Vallejo v. Azteca Elec. Const. Inc.*, 2015 WL 419634, at *3 (D. Ariz. Feb. 2, 2015), quoting *Jin-Ming Lin v. Chinatown Restaurant Corp.*, 771 F.2d 185, 189 (D. Mass. 2011) ("Adjudication of an FLSA cause of action does not call upon the court to make a discretionary policy- or interest-balancing assessment because court do not have discretion to deny the award of FLSA damages when they have been proved…If a Plaintiff proves a FLSA violation, he is entitled to an FLSA remedy, notwithstanding any interference with immigration policy"). *See also*

-4-

*Mariche v. Phoenix Oil, LLC*, 2014 WL 2467964, at *4 (D. Ariz. June 3, 2014) ("Because Mariche's immigration status does not undercut his FLSA claim, evidence regarding his immigration status or its connection with his employment will be inadmissible at trial").

In *Mariche*, the District of Arizona, in holding that immigration status was irrelevant to an FLSA claims, held that "an FLSA plaintiff is not attempting to recover back pay for being unlawfully deprived of a job that he could never have lawfully performed. Rather, he simply seeks to recover unpaid minimum wages and overtime for work already performed." *Id.*  See also *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1065-1066 (9th Cir. 2004) ("We therefore conclude that discovery of each plaintiff's immigration status constitutes a substantial burden, both on the plaintiffs themselves and on the public interest").

The Ninth Circuit and District of Arizona both consistently hold that inquiry into an FLSA Plaintiff's immigration status is both an irrelevant and inappropriate because the harm of disclosure would otherwise have a "chilling effect on their pursuit of their workplace rights." *Id.* at 1061.  At a minimum, this is an implicit recognition that the disclosure of immigration is unnecessary to the adjudication of an FLSA claim, and, more importantly, that the harm of disclosing an undocumented FLSA plaintiff's immigration status and identity is objectively severe.  Accordingly, the Court should allow Plaintiff to proceed under the pseudonym "John Doe Employee."

## II. If required to reveal his identity without a Protective Order in place, Plaintiff faces an objectively real threat of retaliation.

Plaintiff no longer works for Defendants, so Defendants cannot take classic retaliatory measures in response to the Complaint, such as firing him or reducing his hours. However, Plaintiff is extremely vulnerable to retaliation. Even if Plaintiff is allowed to proceed under a pseudonym, were Defendants to decide to disclose his identity to immigration authorities, the harm contemplated and sought to be mitigated, above, would immediately become a reality.

Without a protective order in place requiring Defendants to maintain the confidentiality of Plaintiff's identity, Defendants would have carte blanche to take retaliatory measures into their own hands. This cannot be allowed to happen if Plaintiff is to be able to pursue his legitimate FLSA claims in federal court. Considering the foregoing, Plaintiff is extremely vulnerable to the threat of retaliation without an order in place protecting his identity from disclosure. Accordingly, the Court should allow Plaintiff to proceed under the pseudonym "John Doe Employee" and issue an Order requiring Defendants to maintain the confidentiality of his identity.

## III. Plaintiff's fear of the potential consequences of revealing his identity is objectively reasonable.

Plaintiff's fear of the potential for his arrest, prosecution, and deportation is objectively reasonable. On the one hand, people like Plaintiff are unskilled, low-wage workers who cannot subsist, let alone support a family, without the compensation they earn. This substantiates Plaintiff's need to pursue his available legal remedies. On the other hand, were Plaintiff required to proceed in federal without his identity being

-6-

protected, Plaintiff could expose himself and his family's immigration status and risk arrest, prosecution, and potential deportation. At least by appearance, without Court intervention, Plaintiff has no objectively reasonable recourse to redress the wage theft Defendants have committed against him.

As has already been outlined extensively in Section I of this motion, Plaintiff risks significant consequences for pursuing his otherwise legitimate claims for Defendants' having failed to pay him wages he earned. As the Ninth Circuit aptly stated in *Rivera*:

> There are reportedly over 5.3 million workers in the "unauthorized labor" force…Many of these workers are willing to work for substandard wages in our economy's most undesirable jobs. While documented workers face the possibility of retaliatory discharge for an assertion of their labor and civil rights, undocumented workers confront the harsher reality that, in addition to possible discharge, their employer will likely report them to the INS and they will be subjected to deportation proceedings or criminal prosecution. The caselaw substantiates these fears. *E.g., Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 886–87, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984) (employer reported five undocumented workers after they voted in favor of union representation); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1062–63 (9th Cir.2000) (court allowed the plaintiffs to plead their claims anonymously due to their fear of retaliatory deportation*); Fuentes v. INS, 765 F.2d 886, 887* (9th Cir.1985) (employer reported undocumented workers he had employed for three years for less than minimum wage when they filed suit to recover wages owed), vacated by *Fuentes v. INS*, 844 F.2d 699 (9th Cir.1988); *Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F.Supp.2d 1056, 1057 (N.D.Cal.2002) (employer recruited an undocumented worker and then reported him to the INS after he filed an FLSA claim for unpaid wages); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F.Supp.2d 1053, 1055 (N.D.Cal.1998) (employer reported an undocumented worker *1065 after she filed a FLSA claim for unpaid wages).
>
> As a result, most undocumented workers are reluctant to report abusive or discriminatory employment practices. *See United States v. Brignoni–Ponce*, 422 U.S. 873, 879, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) ("The aliens themselves are vulnerable to exploitation because they cannot complain of substandard working conditions without risking deportation."); *see also Michael J. Wishnie, Immigrants and the Right to Petition*, 78 N.Y.U. L. REV. 667, 676–79 (2003) (arguing that

> undocumented workers are reluctant to report a variety of labor and employment law violations).
>
> Granting employers the right to inquire into workers' immigration status in cases like this would allow them to raise implicitly the threat of deportation and criminal prosecution every time a worker, documented or undocumented, reports illegal practices or files a Title VII action. Indeed, were we to direct district courts to grant discovery requests for information related to immigration status in every case involving national origin discrimination under Title VII, countless acts of illegal and reprehensible conduct would go unreported.

*Rivera*, 364 F.3d at 1065-66.

Considering the foregoing, and as determined by countless courts within this jurisdiction, Plaintiff's fears associated with disclosing his identity are objectively reasonable. Accordingly, the Court should allow Plaintiff to proceed under the pseudonym "John Doe Employee."

### IV. Defendants will not be prejudiced if Plaintiff is allowed to proceed pseudonymously.

Defendants would not be prejudiced by Plaintiff's use of a pseudonym, as shown in sections above, since inquiry into immigration status is improper in an FLSA case. *Mariche*, 2014 WL 2467964, at *4. More concerning, however, is that, if Plaintiff were not permitted to proceed under a pseudonym, Defendants would be incentivized to hire undocumented workers and pay them substandard wages (or nothing at all). *Vallejo*, 2015 WL 419634, at *2. In *Vallejo*, the District of Arizona recognized that "[r]equiring an employer to pay his unauthorized workers minimum wages prescribed by the FLSA for work already performed does not condone or continue an immigration law violation that has already occurred; it merely ensures that the employer does not take advantage of the immigration law violation." *Id.*, quoting *Lucas v. Jerusalem Café, LLC*, 721 F.3d

-8-

927, 935 (8th Cir. 2013).  The "FLSA's coverage of unauthorized workers reduces the incentive to hire such workers and discourages illegal immigration." *Vallejo*, 2015 WL 419634, at *2, quoting *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1308 (11th Cir. 2015).

In *Lucas*, the Eighth Circuit continued:

> The IRCA and FLSA together promote dignified employment conditions for those working in this country, regardless of immigration status, while firmly discouraging the employment of individuals who lack work authorization… Holding employers liable both for violation of federal immigration law and for violation of federal employment law offsets "what is perhaps the most attractive feature of unauthorized workers—their willingness to work for less than the minimum wage.

*Lucas*, 721 F.3d at 936 (internal quotations and citations omitted).  *See also Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F.Supp.2d 1056, 1062 (N.D. Cal. 2002) ("Indeed, every remedy extended to undocumented workers under the federal labor laws provides a marginal incentive for those workers to come to the United States.  It is just as true, however, that every remedy denied to undocumented workers provides a marginal incentive for employers to hire those workers").

In other words, if Plaintiff were not allowed to proceed under a pseudonym, the FLSA's purpose of ensuring all employees receive at least the minimum wage for work performed would be null and void because Plaintiff would be effectively prohibited from pursuing his otherwise legitimate claims against Defendants.  Defendants would thereby be incentivized to hire undocumented workers and engaged in abusive pay practices.  Accordingly, Defendants will not be prejudiced by Plaintiff's proceeding under a pseudonym.

**V.     Not allowing Plaintiff to proceed under pseudonym would burden the public interest in resolving wage disputes and ensuring all employees receive the pay they earn.**

"Congress enacted the Fair Labor Standards Act ("FLSA") in 1938 in response to a national concern that the price of American development was the exploitation of an entire class of low-income workers. President Roosevelt, who pushed for fair labor legislations, famously declared: 'The test of our progress is not whether we add more to the abundance of those who have much; it is whether we provide enough for those who have too little.' S. Rep. No. 93-690, at 4 (1974). The FLSA thus safeguards workers from poverty by preventing employers from paying substandard wages in order to compete with one another on the market." *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 615 (9th Cir. 2018).

Here, to prohibit Plaintiff from proceeding under a pseudonym would have a chilling effect on employees coming forward with legitimate FLSA wage claims and would, as discussed above, incentivize employers to hire undocumented workers and engage in abusive pay practices. In *Rivera v. NIBCO, Inc.*, the Ninth Circuit came to the same conclusion when it held that discovery into the plaintiffs' immigration statuses "constitute(d) a substantial burden, both on the plaintiffs themselves and on the public interest." *Rivera*, 364 F.3d at 1066. Likewise, here, Plaintiff would suffer the substantial burden of risking potential arrest, prosecution, and deportation, and Defendants would be rewarded for failing to pay properly under the FLSA, were Plaintiff not allowed to proceed under a pseudonym. Accordingly, the public interest would be burdened if Plaintiff were not allowed to proceed under a pseudonym.

**VI.   The District of Arizona has previously allowed a class representative of exotic dancers to proceed anonymously where the potential harm of proceeding was far less than that at issue here.**

In *Tijerino v. Stetson Desert Project, LLC*, the District of Arizona consolidated the plaintiff Tijerino's case, 2:15-cv-025663-SMM with anonymous plaintiff "Jane Roe Dancer's" case, 2:16-cv-00408-SMM.  Due to the sensitive nature of the exotic dancing profession in which the plaintiff Jane Roe Dancer engaged, she proceeded anonymously, and the District of Arizona did not strike her complaint or require her to disclose her identity.  Instead, the Court instead allowed her to proceed anonymously without issue. *Tijerino v. Stetson Desert Project, LLC*, 2:15-cv-025663-SMM, Order Consolidating Cases (Doc. 18) (D. Ariz. June 28, 2016), attached as "**Exhibit A**."  As shown above, the contemplated potential harm of disclosing Plaintiff's identity far outweighs that at issue in the *Jane Roe Dancer* matter.  Accordingly, the Court should reinstate the Complaint and allow Plaintiff to proceed using the pseudonym "John Doe Employee."

## CONCLUSION

Considering the foregoing, Plaintiff respectfully requests that he be allowed to proceed under the pseudonym "John Doe Employee," that the Court enter an order prohibiting Defendants from disclosing his identity, and that the Court reinstate the Complaint.

-11-

1  RESPECTFULLY SUBMITTED this 20th day of February, 2026.

2                                          BENDAU & BENDAU PLLC

3                                          By: /s/ *Clifford P. Bendau, II*

4                                          Clifford P. Bendau, II
Christopher J. Bendau
*Attorneys for Plaintiff*